No.   93-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JOHN T. MORAN,

      Plaintiff and Respondent,

-v-

R. CHARLES ROBBIN and CHARLOTTE
ROBBIN, and all other persons,
unknown, claiming or who might
claim any right, title, estate,
or interest in or lien or
encumbrance upon the real
property described in the
complaint adverse to plaintiff's
ownership or any cloud upon
plaintiff's title thereto
whether such claim or possible
claim be present or contingent,

      Defendants and Appellants.



FILED

NOV 1 0 1993

_d Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twentieth Judicial District,
                In and for the County of Lake,
                The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Dirk Larsen, Larsen & Neill, Great Falls, Montana

      For Respondent:

          Keith W. McCurdy, McCurdy Law Firm, Polson, Montana

Submitted on Briefs:  September 30, 1993

Decided:  November 10, 1993

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendants appeal an order of the Twentieth Judicial District Court, Lake County, granting plaintiff's motion for summary judgment and upholding the validity of a tax deed issued to plaintiff. We reverse.

Although numerous issues were raised by the parties, we find two issues dispositive in this case:

1.   Did the plaintiff "abandon" his mailed notice of pending tax deed issuance when he subsequently published notice of such pending tax deed issuance?

2.   Did the plaintiff file a proper proof of notice following the publication of notice of pending tax deed issuance?

The defendants, R. Charles and Charlotte Robbins (the Robbins) owned real property in Lake County, Montana, approximately one mile north of Yellow Bay on the east shore of Flathead Lake. The real property included 6.68 acres of land with 285 feet of lake shore. It also included a cherry orchard, family residence, garage, storage building, and cherry warehouse. The value of the lake shore frontage itself is estimated at between $285,000 and $570,000.

The Robbins had a history of paying their real property taxes late and a tax deed had issued on the property in 1980, but the Robbins subsequently regained title. However, the Robbins again fell behind in paying their real property taxes. On June 4, 1990, the Robbins paid the 1987 and 1989 real property taxes. The taxes for 1988 remained unpaid at that time.

2

On June 22, 29, and July 6, 1989, the Lake County Treasurer published a Delinquent Tax Sale Notice stating that all properties with delinquent 1988 taxes would be sold at public auction on July 20, 1989. On July 21, 1989, the Robbins' property was struck off to Lake County as purchaser and a Certificate of Tax Sale was issued.

On January 21, 1992, the plaintiff, John T. Moran (Moran), paid the Lake County Treasurer $3,208.76 for payment of the 1988, 1990, and 1991 taxes, penalties, and interest due on the real property and received an assignment of duplicate Certificate of Tax Sale from Lake County. On July 17, 1992, Moran sent a notice of pending tax deed issuance to the Robbins by certified mail, return receipt requested. This letter stated that the redemption period expired on September 20, 1992. On August 9, 1992, the certified letter was returned to Moran as unclaimed. Moran filed the returned certified mail envelope with the Lake County Clerk and Recorder on August 24, 1992.

Moran then published a notice of pending tax deed issuance in the Lake County Leader, the local newspaper, on August 27 and September 3, 1992. This notice stated that the redemption period expired on October 26, 1992. On October 26, 1992, Moran applied for and received a tax deed on the subject real property.

On October 29, 1992, the Robbins sent the Lake County Treasurer payment for the first half of the real property taxes for 1992. The treasurer refused payment and sent the Robbins a letter informing them that Moran had taken a tax deed on the property.

3

On November 9, 1992, after the tax deed had been issued, Moran filed an Affidavit of Publication of the Notice of Pending Tax Deed Issuance with the Lake County Clerk and Recorder, and filed a complaint to quiet title to the real property. Both parties moved for summary judgment and, on May 13, 1993, the District Court granted summary judgment in favor of Moran, upholding the validity of the tax deed. From this order, the Robbins appeal.

Our standard of review relating to conclusions of law is whether the trial judge's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

Initially, we note that the law applicable to issuing a tax deed, Title 15, Chapter 18, Part 2, MCA, was substantially revised by the 1987 Legislature. Ch. 587 L. 1987. There has been minimal case law interpreting the new statutes since that time. However, much of the case law decided prior to 1987 is helpful in interpreting the revised statutes. And, the theories behind the strict statutory requirements applicable to tax deed proceedings remain intact.

Every essential and material step required by the tax deed statutes must be strictly followed. Stanford v. Rosebud County (1991), 251 Mont. 128, 134, 822 P.2d 1074, 1077-78. Strict compliance with the statutes is required because the owner risks losing his or her real property for the failure to pay the property taxes. Often, very valuable property is lost for a mere pittance. Indeed, in this case, property worth hundreds of thousands of

4

dollars was "lost" after Moran paid less than $3500 in delinquent taxes, penalties, and interest.

> The proceedings are to a large extent _ex parte_, the owner is an unwilling party, is seldom, if ever, present at the sale, is generally ignorant of it, and the tax almost always bears a very small proportion to the value of the property sold. Upon these considerations it has generally been held that proceedings on tax sales should strictly comply with the statute. . . .

Rush v. Lewis & Clark County (1908), 36 Mont. 566, 569, 93 P. 943, 944.

A critical element in the process of applying for a tax deed requires the giving of notice by the tax deed applicant to the owner of the real property. The giving of notice is jurisdictional; if the legal requirements with respect to notice are not complied with, a county treasurer may not legally issue a tax deed. Adkins v. Redeye (1981), 196 Mont. 114, 119, 639 P.2d 485, 487. In determining the sufficiency of the tax deed proceedings, the record alone is to be considered, and the county treasurer must ascertain from the documents filed as proof of notice whether the required notice has been given. See King v. Rosebud County (1981), 193 Mont. 268, 277-78, 631 P.2d 711, 716-17. A tax deed issued without the required proof of notice is void. See Perry v. Maves (1951), 125 Mont. 215, 217, 233 P.2d 820, 821.

With these principles in mind, we now review the procedural steps which lead up to the tax deed issuance in this case.

I - ABANDONMENT OF MAILED NOTICE

The Robbins contend that Moran "abandoned" his mailed notice of pending tax deed issuance when he subsequently published notice

5

of that pending tax deed issuance. We agree.

In this case, Moran mailed a notice of pending tax deed issuance to the Robbins at the address contained in the county records of the county clerk. In that notice, Moran stated that the redemption date expired on September 20, 1992. When that letter was returned as unclaimed, Moran then chose to publish notice of the pending tax deed issuance. In that published notice, Moran stated that the redemption date expired on October 26, 1992.

When Moran mailed the notice of pending tax deed issuance, he complied with the statutory notice requirement. However, Moran went a step further and elected to publish notice. The published notice had a different redemption date than the mailed notice. Under these facts, and without reaching the issue of whether Moran was _required_ to publish notice after the mailed notice was returned unclaimed, we hold that the first notice was abandoned because of the difference in the redemption dates. There cannot be two redemption dates for the same tax deed property. Persons with a right to redeem have the right to rely on the date given in the notice, and to allow the tax deed applicant to use conflicting redemption dates would create confusion. It is reasonable to assume that Moran intended to give the Robbins additional time in which to redeem when he changed the redemption date in the published notice. Therefore, we hold that when Moran elected to publish notice and lengthened the redemption date, the first notice was effectively abandoned and the second published notice and redemption date controlled.

6

## II - PROOF OF NOTICE

The Robbins also argue that Moran failed to file a proper proof of notice following the service of notice of pending tax deed issuance, as required by statute. We agree.

Section 15-18-212(7), MCA, provides:

> Proof of notice in whatever manner given must be filed with the county clerk. If the purchaser or assignee is other than the county, the proof of notice must be filed with the county clerk within 30 days of the mailing or publishing of the notice. If the purchaser or assignee is the county, the proof of notice must be filed before the issuance of the tax deed under this chapter. Once filed, the proof of notice is prima facie evidence of the sufficiency of the notice.

Based on our holding above, the published notice controls for purposes of this statute.

We note that, under the prior law, an affidavit was required to satisfy the proof of notice requirement. Under the new statute, an affidavit is not required, but the reasoning behind the requirement that a proof of notice, "in whatever manner given," be filed remains clear: the giving of notice is jurisdictional, and unless the statutory requirements with respect to such notice are met, a tax deed may not issue. Yellowstone Inv. & Dev. Co., Inc. v. Yellowstone County (1982), 201 Mont. 290, 294, 654 P.2d 508, 511; Long v. Dillon (1984), 208 Mont. 490, 495, 679 P.2d 772, 775. As stated earlier, the county treasurer must be able to look to the record itself to determine whether the proof of notice has been filed. King, 631 P.2d at 716-17. In this case, Moran had a discussion with a Lake County Deputy Treasurer in which Moran "advised" the treasurer that he had mailed notice and published

7

notice. Discussions between the treasurer and the tax deed applicant do not satisfy the statutory requirement that proof of notice be filed. In fact, there was no proof of the published notice on file at the time the tax deed was issued.

As pointed out above, § 15-18-212(7), MCA, requires that the proof of notice be filed within thirty days after the mailing or publishing of the notice. We have previously held that Moran abandoned the mailed notice when he published notice with a different redemption date. Therefore, Moran was required to file proof of notice within thirty days after publishing the notice. In this case, notice was published on August 27 and September 3, 1992. Clearly, when Moran filed the Affidavit of Publication of the Notice of Pending Tax Deed Issuance prepared by the Lake County Leader's clerk on November 9, 1992, the thirty day period in which to file the proof of notice had expired.

However, Moran argues that § 15-18-212(3)(a) and (b), MCA, are curative statutes, wherein Moran is allowed 120 days to cure his failure to file proof of notice pursuant to § 15-18-212(7), MCA. We agree that § 15-18-212(3)(a) and (b), MCA, allows the non-county purchaser or assignee of a tax sale certificate to give notice of a pending tax deed issuance and to file the proof of notice within 120 days after the county treasurer notifies the purchaser or assignee of the requirement to do so.

We cannot agree, however, that this statute allows a purchaser or assignee to "cure" defects in filing the proof of the notice after the tax deed has been issued. The plain language of § 15-18-

8

212(3)(b), MCA, which, on failure of the purchaser or assignee to file proof of notice, requires the treasurer to "cancel the <u>property tax lien evidenced by the tax sales certificate or assignment</u>," directly counters such conclusion. More importantly, in this case, the treasurer never gave the contemplated notice, in any event.

Although the previous statutes specifically stated that no tax deed could issue prior to the filing of the proof of notice and the new statutes do not so specify, the reasoning behind the filing requirement remains intact. If a tax deed is issued by the treasurer without proof on file in his or her office that notice has been given as required by the statute, the deed is void. <u>Stanford</u>, 822 P.2d at 1078.

In this case, the treasurer issued the tax deed on October 26, 1992, and no proper proof of notice was on file at that time, such proof not being filed until November 9, 1992. There was, accordingly, no way, based on a review of the record, that the treasurer could determine that the statutory notice had been given to the property owners by the tax deed applicant as required by § 15-18-212, MCA. To the contrary, however, if Moran had timely filed the proof of notice in accordance with the statute, the proof would have necessarily been on file when the tax deed was issued. Therefore, the treasurer was without jurisdiction to issue the tax deed, and the tax deed which was issued prior to the time the statutorily-required proof of notice was filed is void ab initio. See <u>Perry</u>, 233 P.2d at 821.

9

Because no valid tax deed has been issued, the Robbins' right to redeem the property has not terminated.  See Walters v. Kruse (1986), 219 Mont. 386, 389, 712 P.2d 780, 782; Section 15-18-111(1), MCA.

Again, we reiterate the importance of strictly complying with all statutory requirements in tax deed proceedings.  If the statutory procedures are not strictly followed, a tax deed will not stand under judicial scrutiny.

Reversed.

Justice

We Concur:

Chief Justice

Justices